IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| **Rapides Parish School Board**, *Plaintiff*, v. **United States Department of Education, et al.**, *Defendants*. | Case No. 1:24-cv-00567-TAD-JPM<br><br>Judge Terry A. Doughty<br><br>Magistrate Judge Joseph H.L. Perez-Montes |

### PLAINTIFF'S MOTION TO DELAY EFFECTIVE DATE AND FOR <u>PRELIMINARY INJUNCTION</u>

The Department of Education's new Title IX rule will force schools across the country to embrace a radical gender ideology that harms students, teachers, and particularly girls—the very group Title IX sought to help. And it fundamentally rewrites the statute Congress enacted fifty years ago. Because there are enduring biological differences between the two sexes, Title IX recognizes that schools may separate the sexes to provide equal opportunity for women and girls and to protect the safety and privacy of all. And because neither staff nor students surrender their First Amendment rights on campus, Title IX has long been interpreted to protect the freedom of speech—including freedom to disagree with federal government's preferred gender ideology without being accused of sex-based harassment.

Plaintiff Rapides Parish School Board respectfully requests that the Court delay the effective date of the challenged portions of the Department of Education's rule, Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance, 89 Fed. Reg. 33,474 (April 29, 2024) (the

1

Rule), or enter a preliminary injunction prohibiting Defendants from enforcing them during this litigation.

As a condition of receiving federal funding, Title IX prohibits educational institutions that receive federal funds from "discriminat[ing] … on the basis of sex" in education. 20 U.S.C. § 1681(a). "Sex" has always been understood to mean the binary, biological difference between male and female. But now, the Rule says Title IX's antidiscrimination prohibition includes "sex stereotypes," "sex characteristics," and "gender identity," 89 Fed. Reg. at 33,886 (to be codified at 34 C.F.R. § 106.10), and requires schools to ignore biology in favor of a person's "gender identity," *see id.* at 33,887 (to be codified at 34 C.F.R. § 106.31(a)(2)). The Rule doesn't define these new terms; instead, it just says that the agency "understands gender identity to describe an individual's sense of their gender, which may or may not be different from their sex assigned at birth." 89 Fed. Reg. at 33,809.

The Rule also adopts a "broader standard" for sex-based harassment than the Supreme Court's interpretation of Title IX in *Davis v. Monroe County Board of Education*, 526 U.S. 629, 633 (1999). 89 Fed. Reg. at 33,498. This new definition of hostile-environment harassment is so broad that it extends to pure speech: Any "unwelcome" "conduct" that is "sufficiently severe or pervasive" that it "limits a person's ability to participate in or benefit from the recipient's education program or activity," 89 Fed. Reg. at 33,884, is unlawful sex-based harassment. And a school must "respond promptly and effectively" to any known conduct that "*may* constitute sex discrimination." 89 Fed. Reg. at 33,888 (to be codified at 34 C.F.R. § 106.44(a)) (emphasis added).

The Court should stay the Rule's effective date or issue a preliminary injunction on enforcement of these provisions because the school board has shown (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm; (3) that the balance of the equities favors relief; and (4) that an

injunction is in the public interest. *Louisiana v. Becerra*, 20 F.4th 260, 262 (5th Cir. 2021). Under the APA, an agency's rule must be "held unlawful and set aside" when it is "contrary to law" or arbitrary and capricious. 5 U.S.C. § 706. Plaintiff is likely to show that the Rule is both. The Rule's gender-identity mandate and broad standard for sex-based harassment conflict with the text and structure of Title IX and its historical context: to promote opportunities for women and girls.

      The Rule also raises a host of constitutional problems. It contradicts constitutional canons of statutory construction requiring a clear statement from Congress before the government imposes conditions on federal funding or infringes on the traditional police powers of the states. Its conditions are so coercive that they exceed Congress's Spending Power. And the Rule goes against the major-questions doctrine, which recognizes that Congress does not use ambiguous statutory language to give administrative agencies delegated authority over questions of vast political or economic significance. Defendants cannot lawfully interpret Title IX to violate these constitutional rules.

      Indeed, Title IX is far from ambiguous: it prohibits "discrimination … on the basis of sex." 20 U.S.C. § 1681(a). That means the binary, biological distinction between male and female. But Title IX and its longstanding regulations *allow* schools to heed an individual's sex, *e.g.*, *id.* § 1686, so doing so is not unlawful discrimination. And "sex" does not include (as the Biden administration prefers and the Rule requires) "sex stereotypes," "sex characteristics," or "gender identity." It is not reasonable to interpret a statute that recognizes biological differences when it comes to privacy in "living facilities" to ignore those differences otherwise. Much less is it reasonable to exempt sex-specific sports teams, but not locker rooms, from the agency's gender-identity mandate.

      The Rule also infringes on First Amendment freedoms. The Biden administration has repeatedly claimed that failing to endorse a gender identity that

differs from sex, including through pronoun usage, is discrimination. Compl. ¶¶ 177–87. The Rule says failure to treat a person based on gender identity imposes "more than de minimis harm." 89 Fed. Reg. at 33,887. The Rule also says anything "unwelcome" that "limits" a complainant's access to the educational program is harassment. *Id.* at 33,884, 33,500. That means anyone who fails to speak consistently with the Biden administration's gender ideology may be investigated for "sex-based harassment." *Id.* at 33,884 (to be codified at 34 C.F.R. § 106.2). In this way, the Rule extends to pure speech, which is constitutionally protected *even if* it is offensive to some. A federal agency may not order local governments to violate citizens' First Amendment rights, so the Department of Education cannot require the school board to investigate and punish staff or student speech as "harassment." *Contra id.* at 33,888 (to be codified at 34 C.F.R. § 106.44(a)). Moreover, the Rule's broad definition of sex-based harassment and refusal to define central terms, like "gender identity" and "sex stereotypes," makes the Rule unconstitutionally vague and overbroad.

Finally, the Rule is arbitrary and capricious for many reasons. First, the agency irrationally rests its gender-identity mandate on *Bostock v. Clayton County*, 590 U.S. 644 (2020), a Supreme Court decision that expressly disclaimed any application to Title IX or to sex-specific private spaces and rested on a statutory structure that differs from Title IX. *Id.* at 681. The logic of *Bostock* does not work with Title IX because Title IX's plain text (and longstanding regulations) permit schools to consider an individual's sex. *See, e.g.*, 20 U.S.C. § 1686; 34 C.F.R. § 106.33. Second, the Rule disregards the privacy interest in not exposing one's unclothed body to persons of the opposite sex. Third, it gives no reasoned explanation for disregarding the inherent athletic advantages enjoyed by males or the greater risk of injury physiological differences create for females playing sports against males—indeed, the Rule does not even acknowledge its effect on school

athletics. Fourth, the agency irrationally treats normal anatomical differences between males and females as if they were "sex stereotypes." Fifth, the Rule fails to address its effect on parental rights, particularly as to school policies that require staff to conceal a child's request to be treated as the opposite sex from the child's parents. Sixth, the Rule ignores schools' significant reliance interests. Across the country, schools (including Plaintiff) built expensive facilities and developed programs on the understanding that private spaces and athletics could properly be separated based on biology. Finally, the agency ignored alternative policies, such as creating rules to protect privacy and girls' equal access to athletic programs and physical education, grandfathering existing categories of programs and practices covered by Title IX, or creating or expanding existing exemptions for those with privacy or safety concerns or other reliance on past policies.

For all these reasons, Plaintiff is likely to succeed on the merits of its challenge to the Rule.

The other preliminary injunction factors also favor Plaintiff. The school board will be irreparably harmed if forced to comply with the Rule by August 1, 2024. It would incur significant compliance costs, none of which are recoverable from the federal government. Worse, it would be forced to adopt policies it does not wish to adopt—policies that harm its students and staff. For example, the Rule would require the school board to change its policy of separating high school sports teams and physical education classes by sex, not gender identity. And it would require school campuses to open girls' restrooms, locker rooms, and showers to males who identify as female. On school-sponsored overnight trips, it would require schools to assign a boy who identifies as female to a room with girls. The resulting injuries would be irreparable.

Finally, the equities favor the school board. Delaying the Rule's effective date or issuing a preliminary injunction to allow judicial review would maintain the

status quo that has existed for the last fifty years. The agency has taken nearly three years to publish the final Rule, proving it is not urgent. In the face of the school board's irreparable harm and the public interest in maintaining the status quo, the equities favor temporary relief.

## PRAYER FOR RELIEF

Plaintiff Rapides Parish School Board respectfully requests that this Court delay the effective date of the Rule's gender-identity mandate, including 34 C.F.R. §§ 106.10 and 106.31(a)(2) as amended by the Rule, and the Rule's standard for sex-based harassment, including 34 C.F.R. §§ 106.2 and 106.44(a) as amended by the Rule. Alternatively or additionally, this Court should enter a preliminary injunction prohibiting enforcement of a gender-identity mandate under Title IX during this litigation or otherwise preserve the status and rights of the parties under 5 U.S.C. § 705, including by prohibiting Defendants from requiring the school board to apply a gender-identity mandate under Title IX to sex-specific physical education classes and athletics programs, restrooms, locker rooms, overnight accommodations, and other educational programs or activities; and by prohibiting Defendants from enforcing the Rule's new standard for sex-based harassment against Plaintiff or requiring Plaintiff to enforce that standard.

Because the relief requested would serve the public interest, Plaintiff asks the Court to exercise its discretion not to require a security or bond under Federal Rule of Civil Procedure 65(c). *City of Atlanta v. Metro. Atlanta Rapid Transit Auth.*, 636 F.2d 1084, 1094 (5th Cir. 1981).

Plaintiff respectfully requests that the Court grant relief by June 21, 2024, or along with the motion for preliminary relief filed by the plaintiffs in the related case, *Louisiana et al. v. U.S. Department of Education*, 3:24-CV-00563-TAD-KDM

(W.D. La. April 29, 2024). *See* Doc. 17, Motion for a Postponement or Stay Under 5 U.S.C. § 705 or Preliminary Injunction (May 13, 2024).

Respectfully submitted this 14th day of May, 2024.

| | |
|---|---|
| s/ Michael T. Johnson<br>**Michael T. Johnson**<br>LA Bar No. 14401<br>**Johnson, Siebeneicher & Ingram**<br>2757 Highway 28 East<br>Pineville, Louisiana 71360<br>Telephone: (318) 484-3911<br>Facsimile: (318) 484-3585<br>mikejohnson@jslawfirm.com | s/ Natalie D. Thompson<br>**Natalie D. Thompson\*\***<br>  **(Lead Attorney)**<br>WDLA Temp. Bar No. 918095<br>**Matthew S. Bowman\***<br>WDLA Temp. Bar No. 913956<br>**Alliance Defending Freedom**<br>440 First Street NW, Suite 600<br>Washington, DC 20001<br>Telephone: (202) 393-8690<br>Facsimile: (202) 347-3622<br>nthompson@ADFlegal.org<br>mbowman@ADFlegal.org<br><br>**Julie Marie Blake\***<br>WDLA Temp. Bar No. 918094<br>**Alliance Defending Freedom**<br>44180 Riverside Parkway<br>Lansdowne, VA 20176<br>Telephone: (571) 707-4655<br>Facsimile: (571) 707-4790<br>jblake@ADFlegal.org<br><br>*\*  Admitted pro hac vice*<br>*\*\* Admitted pro hac vice; practice supervised by members of the D.C. Bar while application is pending.* |

*Counsel for Plaintiff Rapides Parish School Board*

## CERTIFICATE OF CONFERENCE

I certify that on May 13, 2024, I conferred with Benjamin Takemoto, counsel for Defendants, via Benjamin.Takemoto@usdoj.gov. Counsel stated that Defendants oppose the relief requested in this motion.

s/ Natalie D. Thompson
**Natalie D. Thompson**
Lead Attorney for Plaintiff
Rapides Parish School Board

## CERTIFICATE OF SERVICE

I hereby certify that on May 14, 2024, I electronically filed Plaintiff's Motion to Delay Effective Date and for Preliminary Injunction, supporting exhibits, and a supporting memorandum with the Clerk of the Court for the United States District Court Western District of Louisiana by using the CM/ECF system, which electronically served all counsel of record.

I further certify that within one business day of filing I will email courtesy copies of this Motion and supporting memorandum in Word format to chambers at doughty_motions@lawd.uscourts.gov, and will mail courtesy copies of the attachments exceeding 50 pages to chambers at:

> Hon. Terry A. Doughty
> Chief United States District Judge
> 201 Jackson Street, Suite 215
> Monroe, Louisiana 71201

I further certify that I provided courtesy copies of this Motion, accompanying memorandum, and exhibits to Defendants' counsel via email at Benjamin.Takemoto@usdoj.gov.

s/ Natalie D. Thompson
**Natalie D. Thompson**
Lead Attorney for Plaintiff
Rapides Parish School Board

9